FRANZ MARENGHI & another[1] *vs.* MOBIL OIL
CORPORATION.

Middlesex. September 8, 1993. - December 21, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Practice, Civil,* Summary judgment. *Massachusetts Oil and Hazardous Material Release Prevention Act. Hazardous Materials.*

In an action brought under G. L. c. 21E, § 5 (*a*) (5), by owners of real property against the former owners and a gasoline supplier, seeking damages for cleanup costs incurred as a result of soil contamination from a leak in a gasoline storage tank on the plaintiffs' property, where neither the parties nor the judge considered the issue of causation under the statute in granting the defendants' motion for summary judgment, the matter was remanded for further proceedings on the issue. [646-647]

CIVIL ACTION commenced in the Superior Court Department on February 5, 1990.

The case was heard by *Patrick F. Brady*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Leo P. DeMarco, II*, for the plaintiffs.

*Robert M. Gault* for the defendant.

ABRAMS, J. The plaintiffs, Franz Marenghi and Immacolata Marenghi, owners of land in Malden, brought a complaint against the defendant Mobil Oil Corporation (Mobil), and Victor and Barker Barton, prior owners of the land. The complaint alleged that Mobil was liable to the plaintiffs pursuant to G. L. c. 21E, § 5 (*a*) (5) (1992 ed.), for cleanup costs incurred as a result of an oil leak in 1977. A judge of

---

[1] Immacolata Marenghi.

the Superior Court allowed Mobil's motions for summary judgment.[2] The plaintiffs appealed. We transferred the appeal to this court on our own motion. We vacate the summary judgment in favor of Mobil and remand this matter to the Superior Court for further proceedings.[3]

1. *The facts.* The plaintiffs are the current owners of real property located at 189 Highland Avenue in Malden. A gasoline station had been located at that address since approximately 1935. From 1935 to September, 1982, Victor and Barker Barton owned and operated the service station.[4] From approximately 1967 to September 3, 1982, the Bartons also owned the real property on which the station was located.

From approximately 1955 to September, 1982, Mobil sold gasoline to the Bartons. This gasoline was stored in underground tanks which Mobil installed and owned. Mobil loaned these tanks to the Bartons pursuant to Mobil's standard equipment loan agreement which defined Mobil's and the Bartons' respective maintenance, notice and repair obligations with respect to the tanks. In 1977, the equipment loan agreement stated that the Bartons "shall, with respect to the equipment . . . (b) keep it in good operating condition (except to the extent [Mobil] shall make repairs or replacements as provided in Section 1)." Section 1 of the contract stated that Mobil "at its expense shall make repairs . . . deemed necessary by it to keep the equipment in good operating condition provided the necessity therefor is due to ordinary wear or to damage by the elements. [Mobil's] obligation to repair shall not arise until (a) [Mobil] is notified that

---

[2]The docket reflects that another Superior Court judge allowed Mobil's motion for entry of a separate final judgment. See Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974), ("when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties . . . upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment").

[3]Mobil filed a cross claim against the Bartons, seeking indemnification. The judge did not rule on the cross complaint.

[4]The plaintiffs' complaint against the Bartons was stayed pending this appeal.

the item in question is not in good operating condition and (b) [Mobil] shall have determined in its uncontrolled discretion and within a reasonable period that the necessity for repair is due to a cause referred to above."

In late March or early April, 1977, Barker Barton, while checking the gasoline inventory, noticed a discrepancy between the volume of gasoline sold and the volume remaining in the 2,000-gallon underground tank. The Bartons notified Mobil of the problem and, within twenty-four hours, Mobil sent a contractor to investigate the problem. The contractor pumped the remaining gasoline out of the tank, dug it up, plugged a hole in it, relined it, and reinstalled it. Mobil paid for all the repair work. Neither the contractor nor anyone else on Mobil's behalf made any attempt to determine whether the soil in the vicinity of the tank was contaminated.

On September 3, 1982, the Bartons sold the service station and the real property to the plaintiffs. On September 17, 1982, Mobil transferred the underground storage tanks located on the property to the Bartons who simultaneously transferred them to the plaintiffs. At the time of the sale, the Bartons informed the plaintiffs that the 2,000-gallon tank had been relined in 1977. Mobil did not make any disclosures or representations to the plaintiffs about the tank.

In March, 1988, the plaintiffs replaced the underground tanks with new, larger tanks. In removing the old tanks, the plaintiffs found contaminated soil around the 2,000-gallon tank. The plaintiffs' contractor removed approximately fifty cubic yards of contaminated soil and stockpiled it on the site. On July 8, 1988, the Department of Environmental Quality Engineering (DEQE) (now the Department of Environmental Protection [DEP]) issued a notice of responsibility pursuant to G. L. c. 21E to the plaintiffs concerning the gasoline release. On January 17, 1990, DEP notified the plaintiffs that it deemed the property to be a location to be investigated in accord with the Massachusetts contingency plan. DEP concluded, at that time, that there was no need for any further emergency response actions at the site, but advised the plaintiffs that further remedial measures could be re-

quired pending the outcome of further investigation. The plaintiffs thereafter sued both the Bartons and Mobil.

2. *The complaint.* In their amended complaint, the plaintiffs alleged that Mobil owned the underground gasoline storage tank at the time it leaked in 1977. The plaintiffs further asserted that Mobil repaired the tank without cleaning up the surrounding soil and that the plaintiffs later purchased the tank, the gasoline station, and the property, and became financially responsible for cleaning up the gasoline contamination resulting from the 1977 leak. See G. L. c. 21E, § 5 (*a*) (1).

The plaintiffs contended that Mobil was liable to them for the cleanup costs associated with the release under G. L. c. 21E, § 5 (*a*) (5) (1992 ed.), which provides that "any person who otherwise caused or is legally responsible for a release or threat of release of oil or hazardous material from a vessel or site, shall be liable, without regard to fault . . . (iii) to any person for damage to his real or personal property incurred or suffered as a result of such release or threat of release." The plaintiffs argued that Mobil "caused" the 1977 petroleum release through its negligent installation or maintenance of the tank and that Mobil is "legally responsible" for the release through its ownership of the tank at the time of the leak.

3. *The motion for summary judgment.* In its motion for summary judgment, Mobil argued that the plaintiffs had no reasonable expectation of proving that Mobil "caused" the release. Specifically, the affidavits and depositions submitted by Mobil in support of its summary judgment motion showed that the plaintiffs had no reasonable expectation of proving that Mobil had negligently installed the tank, that Mobil had a contractual duty to perform preventive maintenance on the tank, or that Mobil's contractual duty to repair the tank obliged it to repair property contaminated as a result of a tank leak. Once Mobil made this demonstration, the burden shifted, pursuant to Mass. R. Civ. P. 56, 365 Mass. 824 (1974), to the plaintiffs to "by [their] own affidavits, or by the 'depositions, answers to interrogatories, and admissions

on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 714 (1991), quoting *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323-324 (1986). The plaintiffs did not offer any affidavits, depositions, or other documents supporting their allegation that Mobil caused the release.

On the issue of Mobil's responsibility for the release, the judge determined that Mobil could not be held liable under G. L. c. 21E, § 5 (*a*) (5), solely on the basis of its having owned the tank at the time of the release. We agree that a defendant cannot be held liable for a petroleum release based solely on its having owned or operated the site. In *Griffith* v. *New England Tel. & Tel. Co.*, 414 Mass. 824 (1993), we noted that G. L. c. 21E, § 5 (*a*) (5), "establish[es] liability over past owners or operators of oil-contaminated sites when they have 'caused' a release of oil from the site." *Id.* at 830, citing *Wellesley Hills Realty Trust* v. *Mobil Oil Corp.*, 747 F. Supp. 93, 96 (D. Mass. 1990). In *Griffith, supra,* we stated that proof of causation, not site ownership, is needed to impose liability under G. L. c. 21E, § 5 (*a*) (5). We specifically said in *Griffith, supra,* that findings by the judge that the affected areas " 'had been contaminated by oil and [gasoline] that [the defendant] had brought onto the property' . . . [did] not establish that [the defendant] 'caused' the release or a threat of a release of oil from the site." *Id.* We remanded that matter for further proceedings on the causation issue. In *Providence & Worcester R.R. Co.* v. *Chevron U.S.A. Inc.*, ante 319 (1993), we left open the question "whether the fact that oil spilled which a defendant had brought onto a site and stored there in tanks is sufficient to establish [causation] under G. L. c. 21E, § 5 (*a*) (5)." *Id.* at 323 n.3. Neither the court nor the parties have focused on this issue. We vacate the summary judgment in favor of Mobil and remand this matter to the Superior Court for further proceedings on the issue of causation.

*So ordered.*